Carl E. Jennison
John N. Jennison
JENNISON & SHULTZ, P.C.
2001 Richmond Highway, Suite 1102
Arlington, VA 22202-3604
Email: Carl@*JennisonLaw.com*
Email: *John@JennisonLaw.com*

Richard Lehv
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 West 42nd Street, 17th Floor
New York, NY 10036
Tel: (212) 813-5900
Email: *rlehv@fzlz.com*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| INTERPROFESSION DU GRUYÈRE, and SYNDICAT INTERPROFESSIONEL DU GRUYÈRE,<br><br>Plaintiffs,<br><br>-against-<br><br>INTERNATIONAL DAIRY FOODS ASSOCIATION, U.S. DAIRY EXPORT COUNCIL, ATALANTA CORPORATION, and INTERCIBUS INC.,<br><br>Defendants | Case No. _____ |

**COMPLAINT**

Plaintiffs, Interprofession du Gruyère and Syndicat Interprofessionel du Gruyère, by their undersigned attorneys, Fross Zelnick Lehrman & Zissu, P.C. and Jennison & Shultz, P.C., for their Complaint against defendants, International Dairy Foods Association, U.S. Dairy Export Council, Atalanta Corporation, and Intercibus Inc., allege as follows:

1. GRUYÈRE cheese – "widely considered among the greatest of all cheeses" – has been made in the mountainous GRUYÈRE region of western Switzerland and east-central France since 1115 AD. It is painstakingly made from local, natural ingredients using traditional methods that assure the connection between the geographic region and the quality and characteristics of the final product. The entire cheese-making process is subject to certification by Plaintiffs. Cheese made in Wisconsin cannot duplicate the unique flavor of genuine GRUYÈRE cheese made in Switzerland or France.

2. Plaintiffs applied to register GRUYÈRE as a certification mark. Although the United States Patent and Trademark Office approved the application, Defendants filed Oppositions to Plaintiffs' application.

3. This is a civil action under 15 U.S.C. § 1071(b) challenging the August 5, 2020 decision of the Trademark Trial and Appeal Board ("the Board") of the United States Patent and Trademark Office, which wrongly held that Plaintiff's certification mark is a generic term.

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff Interprofession du Gruyère is a corporation organized and existing under the laws of the Switzerland, located and doing business at La Maison du Gruyère, Pringy, Switzerland 1662.

5. Plaintiff Syndicat Interprofessionel Du Gruyère is a corporation organized and existing under the law of France, located and doing business at Maison des Agriculteurs, Vesoul, France 70004.

6. Defendant U.S. Dairy Export Council is a Washington, DC non-profit corporation located and doing business at 2107 Wilson Blvd, Suite 600, Arlington, VA 22201. It is a trade association.

7. Defendant International Dairy Foods Association is a Delaware corporation, located and doing business at 1250 H St. NW, Suite 900, Washington, DC 20005. It is a trade association.

8. Defendant Atalanta Corporation is a New York corporation located and doing business at 1 Atalanta Plaza, Elizabeth, NJ 07206. It is an importer and seller of food products, including cheeses.

9. Defendant Intercibus Inc. is a Florida corporation with an address at P.O. Box 1907, Marco Island Florida, 34146. It is in the cheese business.

10. This Court has jurisdiction over the subject matter of this action under Section 21(b) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1071(b), which provides that a party dissatisfied with a final decision of the Board may institute a civil action in a federal district court challenging the decision. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331.

11. Venue is proper in this district under 15 U.S.C. § 1071(b)(4).

**FACTUAL BACKGROUND**

12. Since 1115 AD, GRUYÈRE cheese has been made in the mountainous GRUYÈRE region of western Switzerland and east-central France by traditional methods, passed down from generation to generation, using only local ingredients. These ingredients and methods, along with expertise of its makers, give GRUYÈRE cheese its unique, inimitable, and sought-after flavor and impeccable quality. The procedure for

3

making GRUYÈRE cheese is precisely specified and strictly controlled. Three groups in the region are involved: dairy farmers (who produce the milk), cheesemakers (who turn the milk into cheese), and "affineurs" (who age or mature the cheese). All three groups follow each prescribed step to the letter.

13. In Switzerland, use of the GRUYÈRE mark is certified by Plaintiff Interprofession du Gruyère. In France, use of the mark is certified by Plaintiff Syndicat Interprofessionel du Gruyère. Both Plaintiffs have issued formal specifications that codify the centuries-old cheese-making practices.

14. Several factors contribute to the flavor, texture, color, and aroma of GRUYÈRE cheese. The first is the milk from which the cheese is made. The cows are fed solely on natural forage – fresh grass in summer and hay in winter, with no additives or silage. No antibiotics or growth hormones may be used. The milk is never pasteurized. The alpine grasses and the microorganisms present in raw milk impart flavor to the cheese. Pasteurization, which involves heating the milk to high temperatures, would destroy these flavors.

15. GRUYÈRE cheese produced by one of the members of Interprofession du Gruyère won the title "Best Cheese In The World" at the World Cheese Awards four times: in 1992, 2002, 2005 and 2015, the only cheese ever to have done so.

16. On September 17, 2015, Plaintiffs filed, under Section 4 of the Lanham Act, 15 U.S.C. § 1054, an Application to register GRUYÈRE as a certification mark for cheese. The application was assigned Serial No. 86759759 (the "Application").

17.     The Application was approved by the Examining Division of the United States Patent and Trademark Office, and the Application was published for Opposition on September 27, 2016.

18.     Defendants then filed in the Board notices of opposition to the Application. The bases for the notices of opposition were that (i) Plaintiffs failed to exercise control over the certification mark; and (ii) GRUYÈRE is a generic term for cheese. The proceedings were consolidated.

19.     Notably, although six other entities requested extensions of time to oppose, they either never opposed or quickly dismissed their oppositions. In addition, neither the Wisconsin Milk Marketing Board, which promotes cheese made in Wisconsin, nor the Wisconsin Cheese Makers Association, which runs the World Championship Cheese Contest, requested extensions of time to oppose the Application. They obviously feel they have no need to use GRUYÈRE for cheese made in Wisconsin. Defendants, too, have no need to use GRUYÈRE. Apparently, by arguing that GRUYÈRE is generic, they hope to take a free ride on the centuries-old goodwill of GRUYÈRE cheese and to use the name GRUYÈRE on cheese made in Wisconsin, Germany, or someplace else. Thus, Defendants seek a license to mislead, deceive, and confuse consumers.

20.     In the consolidated proceedings, Defendants had the burden of proof. Defendants had the burden of showing by persuasive and clear evidence that GRUYÈRE is a generic term. That is, to prevail, Defendants were required to show that GRUYÈRE has "lost all significance as a mark." *Tea Bd. of India v. Rep. of Tea, Inc.*, 80 U.S.P.Q.2d 1881, 1888 (T.T.A.B. 2006).

5

21. Although Defendants had the burden of proving public perception, and although Defendants contended that generic use of GRUYÈRE exists, Defendants failed to show how extensive the alleged generic use is or was, and what impact it has had on public perception. Defendants relied on the alleged sale of Wisconsin "Gruyere" and other non-Swiss/non-French "Gruyere" cheese, but Defendants failed to show how much of these products are sold in the US, what their market share is, and what impact they have had on the US public.

22. In fact, no less an authority than The Encyclopedia Britannica defines GRUYÈRE as follows: "**Gruyère**, hard cow's-milk cheese produced in the vicinity of La Gruyère in southern Switzerland and in the Alpine Comté and Savoie regions of eastern France." And the Oxford Companion to Cheese states that GRUYÈRE is an appellation of controlled origin for "a cheese from Switzerland."

## THE BOARD'S ERRONEOUS DECISION

23. Following a trial and argument of counsel on June 27, 2019, the Board on August 5, 2020, issued a decision holding that GRUYÈRE is generic. The Board's decision is erroneous for numerous reasons. First the Board's decision does not acknowledge its own test for whether a certification mark is generic. The test is whether, at the time of trial, the term has "lost *all* significance as a mark." Nowhere in its decision does the Board mention this legal standard, and nowhere does it say that GRUYÈRE has "lost all significance as a mark."

24. Second, the Board erred in purporting to find that consumers at some point in the past understood GRUYERE "to refer to a type of cheese regardless of its country of origin or any particular certification standards." The Board's does not say when

consumers had this understanding, or what percentage of consumers held this understanding, or whether the number of such consumers constituted a majority.

25. Third, the Board's decision makes no effort to determine what proportion of the public *currently* regards GRUYÈRE as a generic term (that is, a type of cheese that can be made anywhere), as opposed to cheese made in Switzerland or France. In other words, the Board makes no finding that all consumers, a majority of consumers, a significant minority, or some other portion of consumers currently regard it as a generic term.

26. Fourth, the Board improperly put the burden of proof on Plaintiffs. For example, Plaintiffs showed at trial that they had written to a number of retailers that sold non-Swiss/non-French cheese under the mark Gruyère, and as a result these retailers stopped their generic use. The Board's decision asserts that Plaintiffs "have not identified the volume or market share of non-Swiss and non-French cheese privately labeled as 'gruyere' these retailers commanded." This puts the burden of proof on Plaintiffs, when in fact Defendants had the burden of showing the extent of sale of non-Swiss/non-French "Gruyere" cheese, and its impact on consumer perception.

27. Fifth, the Board suggests that if sellers of Wisconsin "Gruyere" cheese changed the name of the cheese at the request of Plaintiffs and to avoid litigation, their decision to change of the name somehow does not help Plaintiffs. The record is devoid of evidence that these sellers changed the name to avoid litigation. Further, whatever their motivation, if these sellers have discontinued use of "Gruyere" as a generic term, the result is that the public will not be exposed to such generic use, and this helps Plaintiffs.

28. Sixth, the Board's decision contains factual errors, including asserting that certain cheese was made in Wisconsin, when in fact it was genuine Swiss GRUYÈRE cheese.

29. Seventh, the Board's decision mistakenly relies on FDA "standards of identity" for certain cheese food products. The Board quotes 21 C.F.R. § 133.10 for the proposition that FDA standards "prescribe the name for each such food. The act requires that this name appear on the label." But the phrase "each such food" in the FDA regulations refers to "foods made *in part* from cheese, including pasteurized process cheese; pasteurized process cheese with fruits, vegetables, or meats; pasteurized blended cheese; pasteurized process cheese food; pasteurized process cheese spread, and related foods." (Emphasis added). None of these categories of "foods made in part from cheese" is involved here.

30. There is no requirement that any cheese maker use the name GRUYÈRE, and not even Defendants claimed that FDA regulations *require* any U.S. cheese manufacturer to use "GRUYÈRE" on labelling for cheese. This is confirmed in Section 343(g) of the Food, Drug, and Cosmetics Act, 21 U.S.C. § 343(g). Indeed, many cheese makers use names such as "GRAND CRU" or "Alpine style," all without objection from the FDA. The Board does not cite a single case where the FDA has required anyone to use "Gruyère" on cheese. Further, the FDA standards of identity are inconsistent. Some standards of identity have a provision called "nomenclature," in which the FDA specifies "the name of the food" but other standards do not have the "nomenclature" provision. For example, the standards for "asiago," "colby," and "parmesan" do not specify the "name

of the food." This inconsistency confirms that little weight should be given to the FDA regulations.

31. Further, the U.S. Supreme Court has held that FDA regulations do not preclude a private right of action for infringement (*Pom Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 110 USPQ2d 1877, 1884 (2014)), and the Board itself has held that Treasury Department regulations concerning names of alcoholic beverages are not binding on the Board on the issue of genericness because the Treasury Department has "no authority to make determinations as to trademark registrability under the Trademark Act."

32. Eighth, the Board made evidentiary decisions based on rules it enunciated in a case decided *ten months after* the GRUYÈRE consolidated oppositions were fully briefed and argued.

33. Accordingly, the Board's decision in the GRUYÈRE consolidated oppositions should be reversed and the Plaintiffs' GRUYÈRE certification mark should be registered.

WHEREFORE, Plaintiff requests this Court to enter judgment:

(a) Reversing the Decision of the Board, dated August 5, 2020, and ordering the United States Patent and Trademark Office to register the certification mark in Application Ser. No. 86759759;

(b) Awarding Plaintiffs such other and further relief as this Court may deem just and proper.

Dated: October 6, 2020                By: _____

Carl E. Jennison (VSB # 42889)
John N. Jennison (VSB # 21842)
JENNISON & SHULTZ, P.C.
2001 Richmond Hwy., Suite 1102
Arlington, Virginia 222023604
(703) 415-1640
(703) 415-0788 (fax)
*Carl@JennisonLaw.com*
*John@JennisonLaw.com*

Richard Lehv
(Admission application forthcoming)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
151 West 42d Street, 17th Floor
New York, New York 10036
Tel:  (212) 813-5900
Email: rlehv@fzlz.com

*Attorneys for Plaintiffs*

10